[Civ. No. 2005.    First Appellate District.—September 15, 1917.]

IREENE PARKE, as Guardian etc., Respondent, v. BOARD OF TRUSTEES OF THE FIREMEN'S RELIEF AND PENSION FUND, etc., et al., Appellants.

MUNICIPAL CORPORATIONS—EXTRA MAN OF OAKLAND FIRE DEPARTMENT —MEMBER OF — DEATH BENEFIT FUND.—An "extra man" in the employ of the fire department of the city of Oakland at the time when the present charter went into effect in 1911 is a member of the department within the meaning of subdivision 2 of section 104, providing for the payment of the death benefit therein provided, since the provision of section 97 of the charter that all members of the department in good standing at the time when the charter went into effect should be retained in their respective positions plainly implies that all persons occupying the grades enumerated in the section and such other employees as the council may provide by ordinance come within the designation "member" of the fire department.

APPEAL from a judgment of the Superior Court of Alameda County.    William H. Waste, Judge.

The facts are stated in the opinion of the court.

Paul C. Morf, City Attorney, and John J. Earle, Deputy City Attorney, for Appellants.

George Samuels, and Irving Magnes, for Respondent.

KERRIGAN, J.—This is an appeal by defendants from a judgment granting to plaintiff a writ of mandate addressed to the defendants, the Board of Trustees of the Firemen's Relief and Pension Fund of the city of Oakland, and its

members, directing them to pay to the plaintiff the sum of one thousand dollars.

The question to be decided is whether or not the minor children of James H. Parke, deceased, who was at the time of his death, and had been for a period of ten years prior thereto, an "extra man" in the employ of the fire department of said city, are entitled to the death benefit of one thousand dollars provided for in subsection 2 of section 104 of the city charter of 1911. If under his employment as an "extra man" Parke is to be regarded as having been a "member" of the department, then the plaintiff was, as decided by the superior court, entitled to the relief demanded.

The undisputed facts are as follows: On July 12, 1905, Parke was appointed to the position of extra man in said fire department, at which time what is known as the old city charter of Oakland was in force. Under the provisions of that charter there can be no question but that an extra man was a member of the department. In the year 1911 the present charter became effective, the pertinent portions of which applicable to the fire department read as follows:

"Section 97. The Fire Department shall consist of a chief of the Fire Department, an Assistant Chief of the Fire Department, a second assistant Chief of the Fire Department, as many Battalion Chiefs as the Council may deem necessary, a Superintendent of Engines and as many captains, lieutenants, engineers, drivers, tillermen, stokers, truckmen and hosemen as the council may deem necessary, and also such other employees as the council may provide for by ordinance. The officers and members of the fire department shall receive annual compensations, comprising their salaries and an allowance of Two dollars per month for the Firemen's Relief and Pension Fund herein provided for, as follows: . . .

"All members of the fire department, appointed prior to September 1st, 1910, and in good standing at the time this charter goes into effect, shall be retained in their respective positions except as otherwise in this charter provided. . . .

"Section 98. No person shall become a member of the fire department unless he shall be a citizen of the United States, of good character for honesty and sobriety, able to read and write the English language, and a resident of the city of Oakland for at least five years next preceding his appointment. . . . Every appointee of the department shall be not

less than 21 nor more than 35 years of age, and before his appointment must pass a satisfactory examination under such rules and regulations as may be prescribed by the Civil Service Board.''

Section 99 provides that the officers enumerated in section 97 ''and all other officers and members shall be appointed by the Commissioner of Public Health and Safety, subject to the civil service provisions of this charter. . . . ''

''Section 100. Each member of the fire department shall be entitled to fifteen days' vacation annually with full pay; such vacations shall be had at such times as the Chief of the fire department shall direct. Each member of the fire department shall be allowed a leave of absence of not less than 24 hours' duration not less than once each week, with full pay. A member becoming incapacitated for duty by reason of sickness shall be entitled to thirty days' sick leave without loss of pay. If such sickness continue he shall be entitled to half-pay for a period of thirty days, and if such sickness shall further continue he shall receive such pay, if any, as the Council shall direct. A member on sick leave shall present such certificate of a reputable physician as the Chief of the fire department may direct.''

The provisions of the charter relating to the pension fund having a bearing on this case provide as follows:

Section 102 provides that a ''member'' of the department who has been such actively for twenty years, and who has arrived at the age of fifty-five years, and by reason of disability is unfit for the performance of his duty, may be retired, and shall receive a monthly pension equal to one-half the salary attached to the rank held by him one year prior to the date of retirement.

Section 103 provides that ''Any member of the department who shall become physically disabled by reason of any bodily injury received in the performance of his duty . . . may be retired from the department upon an annual pension equal to one-half the amount of salary attached to the rank he held one year prior to the date of such retirement . . . to cease on his death.''

Section 104, subdivision 1, provides a pension for the family of an officer, member or employee of the department who may be killed while in the performance of his duty.

Subdivision 2 of said last-mentioned section reads: "When a member of the department shall die from causes other than those specified in subdivision (1) of this section after ten years of service, then his widow, and if there be no widow, then his children, and if there be no widow or children, then his mother, if dependent upon him for support, shall be entitled to the sum of one thousand dollars."

Subd. 3. "Any member of the fire department receiving a pension from the Firemen's Relief and Pension Fund who shall be convicted of a felony, shall become dissipated (or) an habitual drunkard . . . shall forfeit all right to said pension."

Subdivision 4 of the same section provides that any "member of the Fire Department may be rewarded for conduct which is heroic and meritorious"; and subdivision 9 reads: "The Treasurer shall retain from the compensation of each member of the Fire Department Two dollars per month, which shall forthwith be paid into the Firemen's Relief and Pension Fund. . . . "

On July 8, 1911, the city council passed an ordinance which, pursuant to section 97 quoted above, enumerated the officers and persons to be employed in the fire department of the city, and fixed the compensation of such officers and employees in cases in which the charter had not done so. Section 2 of that ordinance provides: "Extra men at $32 per month each, which sum includes an allowance of $2.00 per month each for the Firemen's Relief and Pension Fund."

From and after the passage of said ordinance Parke, under his original appointment of July 12, 1905, continued in service as an extra man in the fire department until the ninth day of September, 1915. During all of such time the city paid to him the sum of $30 per month, and also paid into the Firemen's Relief and Pension Fund the sum of two dollars per month as the allowance established by said ordinance. On said last-mentioned day he died, death being due to natural causes. He left surviving him two minor children, of whom plaintiff is the general guardian and for whose benefit this proceeding is prosecuted. The features distinguishing the duties, responsibilities, and privileges of extra men from those of regular firemen may be said to be that regular firemen are on duty at the engine-houses twenty-four hours a day for six days a week, and receive a higher rate of pay than

extra men; while the latter are not compelled to live at the engine-houses (but may do so if they choose), and are free to engage in any other employment. They are, however, at all times bound to respond to fire-alarms in their respective districts. In the compensation of the extra men, as in that of their fellow-employees of the fire department, there is included the monthly sum of two dollars, which is paid over to the Relief and Pension Fund. Extra men assist in keeping the fire-houses and apparatus in order, and while on active duty the services of both classes of employees are substantially the same; in other words, while on duty fighting fires the duties of extra men are just as exacting and no less onerous than those of the regular firemen.

It is the contention of the defendants in urging their appeal that the present charter of the city of Oakland makes a clear distinction between "members" and "employees" of the fire department; that "extra men" are not recognized as members, and are to be classed as "employees"; and that under the provisions of section 104, subdivisions 1 and 2, above set out, while death benefits are granted to the family of either a "member" or an "employee" who may be killed while in the performance of his duty, the allowance to the family in the event of death otherwise occasioned is limited to the case of "members" only.

We think this position cannot be successfully maintained. Under the terms of the old charter Parke was admittedly a "member" of the department, and with his family was entitled to the relief provided therein by the pension fund. We are of the opinion that the provision of the new charter (section 97) that all *"members"* of the fire department in good standing at the time it went into effect should be retained in their respective positions plainly implies that all persons occupying the grades enumerated in said section, "and . . . such other employees as the council may provide for by ordinance," come within the designation "member" of the fire department. The charter sections hereinabove referred to prescribe the age, residence, and qualifications of employees of the department (section 98); when and to what extent they shall be entitled to a vacation or leave of absence on account of sickness (section 100); under what circumstances such persons shall be entitled to a pension for physical disability (section 103) or forfeit the right to a pension or be entitled to a

reward for heroic and meritorious conduct—and in all of these and other instances in the charter the employees of the department are referred to as members; and we have no doubt that in these instances extra men are included in such designation. We certainly do not think that when the charter framers drafted the provisions of the charter here under consideration they had in mind and intended to declare that extra men should not be regarded as "members" of the department and not entitled to pensions. Moreover, from an examination of the whole charter it is apparent to us that the words "officers," "employees," and "members" are used synonymously and interchangeably. They were so used in the provisions here relating to the fire department.

Counsel for the defendants enters into an elaborate argument to demonstrate that the charter recognizes the distinction insisted upon by him; but his reasoning while plausible is not convincing. We think his construction of the provision under consideration is technical and narrow, and that it being beneficent in character should be liberally construed. So construed, we think the trial court correctly apprehended its meaning and effect.

The judgment is affirmed.

Lennon, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 12, 1917.